## Case No. 12,180.

### The R. W. BURROWES.

### The BORDENTOWN.

[7 Blatchf. 374.] [2]

Circuit Court, E. D. New York. June 18, 1870.

COLLISION—NARROW STREAM—WHISTLE—SPECIAL CIRCUMSTANCES—TOW.

1. Where a steamer sailing in a narrow stream, on a dark and rainy night, with a heavy barge lashed to her side and projecting beyond her bow, saw, not far above the water, two white lights, and, supposing they were upon two vessels at anchor, proceeded on with undiminished speed, and collided with a vessel in motion that was carrying the lights: *Held*, that the steamer was in fault.

2. Where a steam-tug with seven canal-boats in tow on a hawser, was proceeding in a narrow stream, on a dark and rainy night, and carried red and green lights, which, in the state of the weather, could not be seen at any considerable distance, and saw another steamer approaching at the distance of more than a mile, and did not signal her presence and character by a whistle or by sufficient lights on the canal-boats, and a collision ensued between one of the canal-boats and the other steamer: *Held*, that the steam-tug was in fault.

3. Proof that a vessel has complied with the statute regulations in regard to lights will not necessarily exonerate her from responsibility for a collision. When the special circumstances are such as reasonably to call for extraordinary measures to apprise other vessels of her proximity and character, her omission thereof is culpable negligence.

[Appeal from the district court of the United States for the Eastern district of New York.]

This was a libel in rem, filed in the district court, by the owner of a canal-boat which was in tow of the steam-propeller R.

W. Burrowes, against her and the steamboat Bordentown, to recover for injuries sustained by the canal-boat through a collision which took place between such canal-boat and the Bordentown, in the Kills, between Staten Island and New Jersey. The district court decreed against the Bordentown, and dismissed the libel as against the R. W. Burrowes, with costs. [Case unreported.] The libellant and the claimants of the Bordentown appealed to this court.

Erastus C. Benedict, for libellant.

William W. Goodrich, for the R. W. Burrowes.

Welcome R. Beebe, for the Bordentown.

WOODRUFF, Circuit Judge. (1.) I concur generally in the views which governed the decision of the district court in relation to the liability of the steamboat Bordentown, although her fault was by no means gross. The night was very dark, the storm was from the direction ahead of her course, and, of course, her view was greatly obscured. The weather and the obscurity ahead were much worse than when she left Amboy, and her master was desirous of finding shelter and protection. His sincerity in this is proved by the fact that, so soon as he reached Elizabethport, he did lie by until morning. Nevertheless, I cannot wholly acquit the Bordentown of fault. She saw, through the darkness and rain, not far above the water, two white lights. That she supposed they were upon two vessels at anchor was not at all surprising. At the same time, the darkness and uncertainty were such as to call upon her to use the utmost vigilance; and it is testified that the shore on the one or the other side of the narrow channel could be seen. Under such circumstances, she ought to have slackened her speed, on discovering these lights, and approached with such caution that she might be prepared for further discovery and to avoid accident, if her judgment that the lights were on vessels at anchor proved a mistake. Besides this, the circumstance that she had a heavy barge lashed to her port side, and projecting thirty feet beyond her bow, should have admonished her to proceed with greater caution, since she was thereby rendered less manageable, and could turn with less facility to the right or to the left, as exigencies might require.

(2.) But, if degrees of fault were to be ascertained and determined, I should be constrained to say that blame rested much more heavily on the propeller Burrowes. In the very midst of weather such as I have indicated, at midnight, she left her place of safety at Elizabethport, and attempted the passage of a narrow, crooked strait, with seven canal-boats in tow, the forward two tiers being three abreast. I concede that the proof is that the night was not so dark in the direction opposite the wind, that it can be pronounced to have been altogether unsafe for

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

her to go. That is not the point of criticism. The circumstances were such that she put any vessel she might meet in great peril of accident, unless she adopted some more precautions to apprise them of her coming, with so unwieldy a fleet, of such length and width.

It is testified that she carried red and green lights. It is, nevertheless, proved, that, in that state of the weather, they could not be seen at any considerable distance. Either they had become dim, or the glasses protecting them were covered with moisture, obscuring them, or, in the dark and rainy night, the atmosphere was so thick as, in a great degree, to hide them from the sight of an approaching vessel. If, in this defect of the red and green lights, she was blameless, she ought to have nevertheless given notice, by lights on her canal-boats in tow, of her character and theirs; and, more than all, when she saw the Bordentown more than a mile distant, she should have promptly signalled her presence and character by her whistle. I am not satisfied, moreover, that she was not too near the eastwardly shore. The proof, I think, shows that the collision was at the middle of the stream; and yet her witness testifies that, after she saw the Bordentown, she had changed her course, and changed her position two or three hundred feet to the westward, and this is in a channel little, if any, wider than nine hundred or one thousand feet. Now, it was her duty, in such a night, and with such a tow, to have kept well off to the west shore; and the importance of this is clearly illustrated by the circumstances under which the libellant's boat was injured. In the effort to make a sheer, when her peril became apparent, the Burrowes turned to the west, and her tow, attached to her by a long hawser, no longer feeling her power, moved on with her full headway, and struck the Bordentown, which had at that time, according to the proof, come to a full stop.

It will not answer to say, that, in all places and under all circumstances, proof that a tug-boat has complied with the statute regulations in regard to lights upon herself, shows a full discharge of her duty. The Burrowes may have been at liberty to navigate the Kills on that night and in that state of the weather; but the circumstances called for extraordinary diligence to observe all reasonable precautions, by moving at a moderate speed, by seeing to it that her tow was itself under proper control and management, and by keeping well over to her own side of the stream. Approaching vessels were as much interested, and their protection as truly demanded, that her tows should be under control, as that the tug herself should be; and especially so when, there not being any sufficient number of lights on the canal-boats, an approaching vessel would be, as the Bordentown was, unaware of their presence.

Upon a careful examination of the testimony and a review of the whole subject, I am constrained to say, that there was mutual fault on the part of the Burrowes and the Bordentown, and that each should bear one half of the damages and costs of the libellants, and each bear her own costs.

Let the decree below be modified in conformity with this opinion.